UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FLEET GLOBAL SERVICES, INC.,
      Plaintiff,

-vs-              Case No. 6:04-cv-954-Orl-18JGG

REPUBLIC WESTERN INSURANCE CO.,
   Defendant/Third-Party Plaintiff,

v.

TRANSPORTATION INSURANCE
SPECIALISTS, INC.,
AON RISK SERVICES, INC. OF
ARKANSAS,
      Third-Party Defendants.

## ORDER

THIS CAUSE comes before the Court upon Defendant/Third-Party Plaintiff's Motion for Summary Judgment (Doc. 97-1, filed May 1, 2006), to which Plaintiff responded in opposition. (Doc. 115, filed May 31, 2006.) Plaintiff Fleet Global Services, Inc. ("Fleet") brings this action against Defendant/Third-Party Plaintiff Republic Western Insurance Company ("Republic Western") alleging one count of fraud in the inducement based on a shipping insurance contract between the two parties. Republic Western thereafter filed suit against Third-Party Defendants Transportation Insurance Specialists, Inc. ("TIS") and Aon Risk Services, Inc. of Arkansas ("AON") seeking contribution against both TIS and AON, pursuant to Fla. Stat. § 768.31, Florida's Uniform Contribution Among Tortfeasors Act ("UCATA"), and contractual

indemnification against TIS. After reviewing the motions and memoranda provided by each party, the Court denies summary judgment to Republic Western.[1]

## I. BACKGROUND

This action arises from Fleet's purchase of a trucking liability policy issued by Republic Western, effective May 15, 2003. Fleet is, for all relevant times in this lawsuit, a long-haul trucking company licensed to operate as a trucking motor carrier in the United States. As a trucking company, Fleet is required to maintain truckers' liability insurance. Republic Western is, for all relevant times in this lawsuit, a casualty insurance company, in the business of providing liability insurance for trucking companies such as Fleet. All licensed insurance companies, such as Republic Western, are rated by A.M. Best Company, Inc. ("A.M. Best").[2] The communications regarding the purchase of the liability policy were conducted between AON, Fleet's agent, and TIS, Republic Western's agent.

Fleet alleges that it relied on Republic Western's A.M. Best rating when purchasing the liability policy, and that Republic Western failed to disclose to Fleet that its A.M. Best rating would probably be lowered shortly after the purchase of the policy. Fleet claims that the initial A.M. Best rating of "B7" was sufficient for Fleet to conduct its normal business activities, but that the subsequent lowering of the A.M. Best rating to "C" caused Fleet to lose most of its

---

[1] Summary judgment motions have also been filed, individually, by both AON and TIS, and have been dealt with by this Court in separate orders.

[2] A.M. Best is one of five organizations designated as a Nationally Recognized Statistical Rating Organization by the United States Securities and Exchange Commission. A.M. Best issues financial strength ratings that measure an insurance company's ability to pay claims.

customers. Republic Western's A.M. Best rating was downgraded to a C rating on May 21, 2003. Fleet alleges that Republic Western knew it was under investigation by the State of Arizona Department of Insurance ("AzDOI") due to financial dealings of Republic Western's parent holding company, AMERCO. According to Republic Western, the focus of AzDOI's investigation was large deductible policies issued by Republic Western to AMERCO subsidiaries, primarily U-Haul. Fleet alleges that Republic Western knew that its A.M. Best rating was likely to be lowered as a result of this investigation. Fleet alleges that if it had known that Republic Western was soon to lose its B7 rating, and be lowered to a C rating, it would never have placed insurance coverage with Republic Western.

Fleet alleges that Republic Western's A.M. Best rating of B7 was an affirmative representation of the financial condition of Republic Western upon which Fleet relied when making its decision on an insurance policy. Fleet alleges that it was in a class of persons who Republic Western knew would rely on the A.M. Best rating, and therefore Republic Western had a duty to inform Fleet of the probable lowering to a C rating. In support of its allegations, Fleet chronicles a series of communications between the various parties involved in this action. (See Doc. 115 at 6-14.) Highlights of these communications are as follows:

> 2. **October 18, 2002 Letter from Richard Amoroso, President and CEO of [Republic Western] to Dave Tooley, President of TIS:** Amoroso assures his Managing General Agent, Tooley, that [Republic Western] had received assurances from A.M. Best that as the restructuring of [AMERCO] moved forward they would return [Republic Western] to a B+ rating.
>
> . . .

4. **April 3, 2003 Letter from [AzDOI] to Amoroso:** By this letter, the Department of Insurance is precluding any transactions from occurring between [Republic Western] and any affiliate of [AMERCO].

. . .

6. **April 17, 2003 Letter from [AzDOI] to Amoroso:** The Department is informing Amoroso that it violated the previous order dated April 3, 2003 regarding affiliated insurance contracts.

7. **April 18, 2003 Letter from Ray Sillari, Underwriting V.P. of [Republic Western] to Tooley:** This very important letter states that:

> At the present time we are rated B by A.M. Best. With the refinancing of our parent company, [AMERCO] taking longer than expected, we do not see in the foreseeable future returning to our B+ rating and we may in fact suspend our rating from A.M. Best[] while our parent works through their refinancing. During this anticipated lengthy period of suspended rating we will be reducing the amount of business written by Republic Western.
> Accordingly, we will be terminating your agent contract with Republic Western effective July 1, 2003 for all commercial lines with the exception of transportation which is terminated effective November 1, 2003.

8. **Deposition Excerpt of Ray Sillari dated March 2, 2006:** Sillari testified that the [AzDOI] wanted [Republic Western] to stop writing certain lines of insurance and that [Republic Western] ceased writing all lines.

9. **April 25, 2003 Press Release:** [AMERCO] created this press release to state that [Republic Western] was exiting all non-U-Haul lines of business.

. . .

12. **May 5, 2003 Letter from Amoroso to [AzDOI]:** Amoroso notes that the meeting between he and the Department of Insurance on May 1, 2003, concluded that "Republic Western Insurance Company's financial condition rendered the continuance of its business as hazardous to the public or to holders of its policies or certificates of insurance."

. . .

14. **May 7, 2003 Offer of Insurance from TIS to AON RISK SERVICES**

. . .

15. **May 12, 2003 Letter from Cunningham [of AON] to Watson, TIS:** A letter from AON requesting that coverage be bound on the trucker's auto liability policy for [Fleet] effective 5/15/03.

(Doc. 115 at 6-10.) Fleet continues to cite to documents that show that the downgrade to a C rating, in sum, "had a deleterious impact on the operations and profitability of [Fleet] and that many shippers have ceased doing business solely because of the C rating." (Id. at 12.)

## II. DISCUSSION

### A. Summary Judgment Standard

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see, e.g., Stachel v. City of Cape Canaveral, 51 F. Supp. 2d 1326, 1329 (M.D. Fla. 1999). Material facts are those that may affect the outcome of the case under the applicable substantive law. Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all

reasonable doubts against the moving party. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The moving party may rely solely on the pleadings to satisfy its burden. Celotex, 477 U.S. at 323-24. A non-moving party bearing the burden of proof, however, must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories, or admissions that designate specific facts indicating there is a genuine issue for trial. Id. at 324. If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. Anderson, 477 U.S. at 249-50. Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case. Celotex, 477 U.S. at 322.

### B. Fraud in the Inducement

Under Florida law, a plaintiff seeking to establish fraud in the inducement must prove the following:

> (1) a misrepresentation of a material fact; (2) that [the] maker of the misrepresentation knew or should have known of the statement's falsities; (3) intent by the maker of the statement that the representation induce another to rely and act on it; and (4) resulting injury to the party acting in justifiable reliance on the representation.

Palumbo v. Moore, 777 So. 2d 1177, 1179 (Fla. 5th DCA 2001); see also Phila. Indem. Ins. Co. v. Kohne, 294 F. Supp. 2d 1319, 1328 (M.D. Fla. 2003). At this summary judgment stage, Fleet has clearly met the requirements of showing fraud in the inducement. First, Fleet has alleged that Republic Western misrepresented material facts in the negotiations which resulted in Fleet's purchase of liability insurance from Republic Western. These material facts centered around the financial stability of Republic Western, and its ability to maintain an A.M. Best rating of B

or higher. Satisfying the second prong, Fleet alleges that Republic Western knew that it was under investigation by the AzDOI, and was aware of a potential downgrade in its A.M. Best rating, yet failed to alert either AON (Fleet's representative) or Fleet itself of this information. Third, Fleet alleges, and supports this allegation with evidence, that the sole purpose in the lack of information exchange by Republic Western regarding their investigation by AzDOI and their potential downgraded A.M. Best rating was to earn Fleet's business. Finally, Fleet has alleged that it suffered an injury; namely, Fleet lost present and future clients because of the C rating.

Fleet's claim is not merely one for fraud based on a third-party representation (Republic Western's representations to A.M. Best upon which Fleet relied). Fleet's claim also does not require a "detailed road map" in order to be clearly understood, as Republic Western has claimed. (Doc. 97-1 at 9.) Fleet is not attempting to hold Republic Western liable for A.M. Best's rating system, but is instead attempting to hold Republic Western liable for a lack of full disclosure, leading to a complete misrepresentation, of its financial well-being when it entered into an insurance contract with Fleet.

Having sufficiently stated a claim for fraud in the inducement, Fleet's claim will survive the summary judgment stage. Republic Western briefly addresses several other points in its Motion for Summary Judgment which it believes precludes any successful claim on the part of Fleet. The Court will address each of these in brief.

*i. Waiver*

"The universal general rule is that when a party claiming to have been defrauded enters, after discovery of the fraud, into new arrangements concerning the subject matter of the contract to which the fraud applies, he is deemed to have waived any claim on account of the fraud . . . ." Price v. Airlift Int'l, Inc., 181 So. 2d 549, 550 (Fla. 3d DCA 1966) (citations omitted). Fleet asserts that it did not learn the facts of the alleged fraud until after discovery was conducted in the present case. Therefore, Fleet has not waived its claim despite applying for a second policy with Republic Western after learning of their C rating.

*ii. False Statement of Fact Concerning Past or Existing Fact*

As both parties state, a general rule of fraud is that "a false statement of fact, to be a ground for fraud, must be of a past or existing fact, not a promise to do something in the future." Wadlington v. Cont'l Med. Servs., Inc., 907 So. 2d 631, 632 (Fla. 4th DCA 2005); Virkler v. Herbert Enters., 403 F. Supp. 2d 1141, 1150 (M.D. Fla. 2005) (internal quotation marks omitted). Fleet alleges that Republic Western has misrepresented its financial state from the past and present (at the time of the representation), which led to a future downgrading of its A.M. Best rating. Fleet has not claimed that there was a future promise on the part of Republic Western.

*iii. Opinion Versus Fact*

Republic Western acknowledges that "[w]hether a statement is one of fact or opinion depends on the circumstances in each case." Tres-AAA-Exxon v. City First Mortg., Inc., 870 So. 2d 905, 907 (Fla. 4th DCA 2004). Fleet alleges that it was relying on the expertise of

Republic Western's knowledge of its own financial situation, thereby placing the representations in this case to be one of fact and not opinion.

*iv. Economic Loss Rule*

"The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004). A recognized exception to the economic loss rule, however, is when the tort was committed independently of the contract breach, which includes fraud in the inducement claims. Id. at 537. "[W]hen the fraud occurs in the connection with misrepresentations, statements or omissions which cause the complaining party to enter into a transaction, then such fraud is fraud in the inducement and survives as an independent tort." D & M Jupiter, Inc. v. Friedopfer, 853 So. 2d 485, 487-88 (4th DCA Fla. 2003) (internal quotation marks omitted). Fleet's action falls within these circumstances, and therefore the fraud in the inducement claim is not barred by the economic loss rule.

*v. Damages*

There are quite clearly, in the opinion of this Court, issues of material fact as to damages suffered by Fleet as a result of Republic Western's alleged fraud. This is a question of fact, and therefore it is within a jury's province to determine the legitimacy of the lost profits and revenues that Fleet has put forward.

## III. CONCLUSION

For the foregoing reasons, Republic Western's Motion for Summary Judgment is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on this 7th day of November, 2006.

G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties